UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARSHA LEVOIJA GREGORY, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:20-cv-00860-SRC |
| KILOLO KIJAKAZI, Commissioner of the Social Security Administration[1], | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Marsha Levoija Gregory requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for disability-insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The Court affirms the Commissioner's decision.

**I.   Procedural history**

On February 2, 2017, Gregory filed a Title II application for disability-insurance benefits for a period of disability. Tr. 10, 148–49. The Social Security Administration initially denied her application on July 25, 2017. Tr. 10, 78–84. Gregory requested a hearing before an ALJ on August 16, 2017 and testified before the ALJ on December 3, 2018. Tr. 10. After a hearing, the ALJ denied Gregory's application in a decision dated May 22, 2019. Tr. 10–20. On April 27, 2020, the Appeals Council denied Gregory's request for review. Tr. 1–3. As such, the ALJ's opinion stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Decision of the ALJ

The ALJ determined that Gregory was not engaged in substantial gainful activity during the relevant period from her alleged on-set date of January 1, 2016, through her date last insured of March 31, 2018 (the period of disability).  Tr. 12.  The ALJ found that Gregory had the severe impairments of seropositive rheumatoid arthritis, depression/mood disorder, and degenerative disc disease of the cervical spine.  Tr. 12.  The ALJ found that Gregory did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 12–13.

The ALJ determined that Gregory retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and could lift up to 10 pounds occasionally, sit/stand for about 2 hours, and sit for up to 6 hours in an 8-hour workday, with normal breaks.  Tr. 15.  Gregory could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  Tr. 15.  She could occasionally balance, stoop, kneel, crouch and crawl, and frequently handle objects using her bilateral upper extremities.  Tr. 15.  She needed to avoid moderate exposure to operational control of moving machinery.  Tr. 15.  She needed to avoid unprotected heights and exposure to hazardous machinery.  Tr. 15.  She was limited to simple, routine, and repetitive tasks, and her work should be in a low stress job, defined as having only occasional changes in the work setting.  Tr. 15.  She could only have occasional interaction with the public, co-workers, and supervisors.  Tr. 15.

The ALJ found that Gregory was unable to perform any "past relevant work" through the date she was last insured, March 31, 2018.  Tr. 18.  The ALJ stated that through the last date insured, Gregory could still perform "work that exists in significant numbers in the national economy," including work as a weight tester, touch up screener, and final assembler of optical

goods. Tr. 20. Consequently, the ALJ found that Gregory was not disabled. Tr. 20. Gregory appeals. Docs. 1, 14.

### III.  Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i)

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. § 404.1520(c).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At step five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016). The Eighth Circuit explained that "[w]e defer heavily to the findings and conclusions of the Social Security Administration."

5

*Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd*, 621 F.3d at 738) (internal quotations omitted).

IV.     **Discussion**

As noted above, the ALJ determined that Gregory retains the RFC to perform sedentary work with certain limitations, and that she can perform work that exists in significant numbers in the national economy. Tr. 15–20. Gregory argues that the Court should remand because the ALJ failed to give the appropriate weight to the medical opinions of Dr. F. Timothy Leonberger and Dr. Stephen S. Scher and because substantial evidence does not support the ALJ's RFC determination regarding her physical limitations. Doc. 14 at 2, 7.

   A.     **The ALJ afforded appropriate weight to the medical opinions of Dr. Leonberger and Dr. Scher**

ALJs must weigh all medical opinions, whether by treating or consultative examiners, based on: (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). "While an ALJ must consider all of the factors set forth in 20 CFR § 404.1527(d),[2] he need not explicitly address each of the factors." *Derda v. Astrue*, 2011 WL 1304909, at *10 (E.D. Mo. 2011) (collecting cases).

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to

---

[2] The 2011 version of 20 C.F.R. § 404.1527, at issue in *Derda*, listed the factors for ALJs to consider in determining weight to give medical opinions in section (d). The regulation has been amended and the latest version lists the factors in section (c).

6

any medical opinion.  *See* 20 C.F.R. § 404.1520c(a).  Because Gregory filed her claim on February 3, 2017, however, the guidelines for considering medical opinions under 20 C.F.R. § 404.1527(c) apply.  *Id.*  But under 20 C.F.R. § 404.1527(c), the opinion of a non-treating source is never entitled controlling weight.

### 1. Dr. Leonberger's medical opinion

Gregory argues that the ALJ failed to give proper weight to Dr. Leonberger's medical opinion.  Tr. 495–498; Doc. 14 at 4–5.  Dr. Leonberger performed a one-time psychological consultative examination on June 13, 2017.  Tr. 495–498.  Dr. Leonberger took Gregory's history and performed a mental-status exam, reporting that Gregory presented with an "extremely depressed" mood and cried throughout the appointment.  Tr. 497.  Dr. Leonberger opined that Gregory had a marked impairment in her ability to understand, remember, and apply information; her ability to interact with others; her ability to concentrate, persist, or maintain pace; and her ability to adapt and manage herself.  Tr. at 498.

The ALJ considered the opinion by Dr. Leonberger but afforded it little weight.  Tr. 17–18.  The ALJ noted that Dr. Leonberger "confounded her mental and physical condition in making these assessments."  Tr. 17.  The ALJ concluded that Dr. Leonberger's opinion was inconsistent and not supported by the objective medical evidence.  Tr. 18.

The ALJ first observed that Dr. Leonberger's conclusion regarding Gregory's medication was contradicted by the observations of Gregory's treating rheumatologist.  Tr. 17.  Dr. Leonberger opined that Zoloft, Gregory's antidepressant, did not seem to be working.  Tr. 17.  Yet Gregory's rheumatologist, Dr. Thekkemuriyil, over the course of the relevant time period, repeatedly indicated that Gregory's symptoms of depression were improved and stable on medication.  Tr. 274. 321, 730, 746.  Gregory herself repeatedly told her medical providers that

7

Zoloft was helping with her depression. Tr. 321, 274, 765. Dr. Leonberger's conclusion to the contrary seemed based entirely on Gregory's subjective complaints. Tr. 17, 498. The ALJ also pointed out that while Dr. Leonberger indicated that Gregory was "ready and willing" to pursue psychiatric treatment, he failed to acknowledge that Gregory had consistently rejected Dr. Thekkemuriyil's recommendations to pursue such psychiatric treatment and had received no treatment from a mental-health provider over the course of the relevant period. Tr. 17, 498.

The ALJ found that Dr. Leonberger at times confounded the effects of Gregory's physical and mental limitations and his opinions were inconsistent and unsupported by objective medical evidence. Tr. 17–18. Dr. Leonberger opined that Gregory had a marked limitation in the area of social functioning because she did not like to go out due to embarrassment about her *physical impairments*. Tr. 17, 497. But Gregory also told him that she would invite her friends over to her home, and none of her treatment notes reflect any significant social limitations. Tr. 497. Dr. Leonberger then opined that Gregory had marked impairments in her ability to adapt and manage herself, based entirely on the fact that she was "receiving significant assistance from her older sons in order to manage her household." Tr. 498. But Gregory had reported to Dr. Leonberger that she was still able to clean the house, cook for herself, and do laundry, "if I push myself." Tr. 497. Gregory was able to drive and handle her own money, and only reported needing help from her sons for physical activities like loading and unloading her groceries. Tr. 497.

Dr. Leonberger also opined that Gregory had marked impairments in concentration, persistence, or maintaining pace as a result of chronic pain, when his own examination indicated that her attention/concentration was fair and memory testing was normal. Tr. 497. Gregory's only abnormal result on the mental-status test was some difficulty performing serial sevens (counting in increments of seven). Tr. 15. And even Gregory's difficulty performing serial

8

sevens is consistent with the ALJ's finding that Gregory had moderate limitations in attention/concentration and was thus limited to simple routine, repetitive tasks, and low stress work.  Tr. 15.

The Court finds that the ALJ properly considered the regulatory factors in assigning little weight to Dr. Leonberger's opinion.  The ALJ gave the opinion little weight because it was inconsistent with medical evidence in the record, which serves as an appropriate ground to discount medical opinion testimony.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) ("It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000))); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) (finding that inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a doctor's opinion (citation omitted)).

The ALJ also properly considered the degree to which Dr. Leonberger's opinion was unsupported by Dr. Leonberger's own findings.  *See* 20 C.F.R. § 404.1527(c)(4).  Dr. Leonberger's opinions were at times inconsistent with his objective findings, such as his conclusions regarding Gregory's social functioning, her ability to adapt and manage herself, and her concentration, persistence, or pace.  Tr. 497–498.  Dr. Leonberger also did not state to what extent he relied on his clinical observations as opposed to Gregory's subjective complaints.  Tr. 495–498.  Because he failed to do so, the ALJ could properly assign his opinion less weight.  See 20 C.F.R. § 404.1527(c)(3) ("[T]he more a medical source presents relevant evidence to support

9

a medical opinion, particularly medical signs and laboratory findings, the more weight ALJs will give to that opinion.").

Additionally, Dr. Leonberger only saw Gregory for a one-time psychiatric examination, so the ALJ did not have to afford his opinion significant weight. *McCoy v. Schweiker*, 683 F.2d 1138, 1147 n.8 (8th Cir. 1982) ("[T]his Court has held that as a general rule little weight is afforded to . . . reports of consulting physicians who examine the claimant only on one occasion." (citing *Brand v. Secretary of Health, Education and Welfare*, 623 F.2d 523, 527 n.6 (8th Cir. 1980)). In sum, the ALJ found Dr. Leonberger's opinion inconsistent with the other medical evidence in the record, including his own findings on examination. Accordingly, the ALJ properly afforded Dr. Leonberger's opinion little weight.

Gregory asserts that the ALJ's findings regarding the effects of her medication ignore the nature of mental-health impairments, which can show episodic periods of improvement. Doc. 19 at 3 (citing *Freeman v. Colvin*, 2016 WL 4620706, at *5 (W.D. Mo. Sept. 6, 2016)). But this argument actually cuts the other way. *See Freeman*, 2016 WL 4620706, at *5 ("Mental illness is episodic by nature, symptoms can wax and wane, and an individual can have good days and bad days, such that a snapshot of any single moment may indicate little about the individual's overall condition."). That Gregory appeared "extremely depressed" and tearful on the single date of her consultation with Dr. Leonberger does not obviate the consistent findings by her treating physician, Dr. Thekkemuriyil, that her depression was improved with medication and the fact that near the end of the relevant period her depression was "much better." Tr. 321, 324, 274, 726, 742, 746, 765. This evidence, showing that Gregory's depression improved over time with medication, supports the ALJ's finding that her depression was not disabling. *See Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or

10

medication, it cannot be considered disabling." (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) ("The notes also indicate her mental conditions improved with the proper medications." (citation omitted)).

Gregory also claims that the ALJ relied on his own interpretation of selective portions of the record, citing Dr. Thekkemuriyil's observations that she was still depressed or tearful at times. Doc. 19 at 3–4 (citing *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017)). But these signs of depression were accompanied by remarks from Dr. Thekkemuriyil and Gregory stating that Zoloft was helping alleviate her depression. Tr. 274. 321, 730, 746, 765. Additionally, as the ALJ discussed, Gregory had no treatment with a mental-health professional during the relevant period. Tr. 17. She consistently declined to follow Dr. Thekkemuriyil's recommendations to see a mental-health provider. Tr. 17, 277, 730, 746, 765. Gregory's minimal treatment for her depression is inconsistent with a disabling mental impairment. *See Hensley*, 829 F.3d at 933–934 (ALJ properly discounted plaintiff's complaints because plaintiff failed to attend prescribed therapy for PTSD and there was no evidence that his failure to attend therapy sessions was a symptom of his mental illness.); *see also* 20 C.F.R. § 404.1530(a)–(b) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled[.]").

### 2. Dr. Scher's medical opinion

Gregory argues that the ALJ failed to give proper weight to Dr. Scher's medical opinion. Tr. 63–71; Doc. 14 at 4–5. Dr. Scher was a state agency consulting psychologist who had not treated or examined Gregory. Tr. 63–71. Dr. Scher's opinion was based entirely on Dr. Leonberger's opinion and Gregory's other medical records. Tr. 63–71. Dr. Scher acknowledged

that Dr. Leonberger's "lack of referral to psychiatry for greater or more aggressive attempts at intervention" made Dr. Leonberger's opinion less persuasive.  Tr. 18, 64.  Dr. Scher opined, however, that Gregory had a marked limitation in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 68–69.  Dr. Scher concluded that Gregory was "not able to successfully complete a full work week in a competitive work setting without significant interference from psychiatric symptoms."  Tr. 69.

      The ALJ afforded little weight to Dr. Scher's findings that Gregory had marked impairments in concentration, persistence, and pace and the marked limitation in the ability to complete a normal workday and workweek.  Tr. 18.  The ALJ observed that Dr. Scher's opinion was inconsistent and not supported by the objective medical evidence because the only evidence of mental-health impairments were the consultative examination from Dr. Leonberger, treatment by Dr. Thekkemuriyil, and a hospitalization that occurred in September 2018, after the date last insured, March 31, 2018.  Tr. 18.  The ALJ had already discounted Dr. Leonberger's opinion for the reasons stated above, and Dr. Thekkemuriyil had reported that Gregory's depression was manageable through medication.  Tr. 17–18.  The hospital visit in question was after the date last insured, so it was only relevant to the extent it reflected on  Gregory's disability during the relevant time period.  Tr. 18.  *See Pyland v. Apfel*, 149 F.3d 873, 878 (8th Cir. 1998) ("[E]vidence concerning ailments outside of the relevant time period can support or elucidate the severity of a condition. However, evidence outside the relevant time period cannot serve as the

only support for the disability claim." (internal citations omitted)). The ALJ also pointed out that Gregory had not seen a mental-health provider for psychiatric treatment at any time during the relevant period, supporting the moderate functional limitations found by the ALJ. Tr. 18.

The Court finds that the ALJ properly considered all of the regulatory factors in assigning little weight to Dr. Scher's medical opinion. Opinions from a non-treating and non-examining source, like Dr. Scher, are entitled to little weight as a general matter. *See* 20 C.F.R. § 404.1527(c)(1)–(2). The more relevant evidence and supporting explanations a non-treating source provides for an opinion, the more persuasive the opinion will be. *See* 20 C.F.R. § 404.1527(c)(3). Further, opinions are entitled to more weight if they are consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4). The ALJ gave Dr. Scher's opinion little weight because it was inconsistent with other substantial medical evidence in the record, such as Dr. Thekkemuriyil's findings and Gregory's lack of treatment from a mental-health provider. *See* 20 C.F.R. § 404.1527(c)(4); *Wagner*, 499 F.3d at 849. The ALJ discussed the sparse factual basis for Dr. Scher's opinion, explaining that Dr. Scher's conclusion is inconsistent and not supported by the objective medical evidence. Tr. 18. Accordingly, the ALJ properly afforded Dr. Scher's opinions little weight. Tr. 18.

Gregory argues that the ALJ improperly dismissed the opinions of Dr. Leonberger and Dr. Scher and failed to rely on substantial medical evidence. Doc. 14 at 5–6 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). The Court finds this argument unpersuasive.

While some medical evidence must support the ALJ's RFC finding, there is no requirement that the evidence take the form of a medical opinion. *See Hensley*, 829 F.3d at 932; *see also Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012). The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct

13

from a medical source's opinion. *See Kamann v. Colvin*, 721 F.3d 945, 950–51 (8th Cir. 2013); *see also Perks*, 687 F.3d at 1092–93 ("Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC."). Indeed, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (alteration in original)).

Gregory's citation to *Lauer* is unavailing. Doc. 14 at 5–6. In *Lauer*, the claimant's treating psychiatrist as well as a consulting psychologist who administered several psychological tests both opined that the claimant had severe work-related functional limitations. *See Lauer*, 245 F.3d at 704. The record contained very little evidence to the contrary, yet the ALJ disregarded their opinions anyway. *See id.* The Eighth Circuit remanded, finding "no medical evidence to support the ALJ's conclusion" regarding the claimant's mental impairments. *Id.* at 705.

In contrast to the claimant in *Lauer*, Gregory presents no opinion from a treating source to support her claims of a disabling psychiatric limitation. Tr. 17–18. She obtained no treatment at all from a mental-health provider during the relevant period, nor did the consultative examiner, Dr. Leonberger, refer her for any further psychiatric treatment during the time in question. Tr. 18. Meanwhile, Gregory's treating rheumatologist indicated on multiple occasions that Gregory's depression had improved from taking Zoloft, further undermining Gregory's position. Tr. 17–18. The ALJ did not need to afford significant weight to the opinions of Dr. Leonberger and Dr. Scher and was acting within the appropriate "zone of choice" in determining that the

14

medical evidence showed only moderate functional limitations resulting from Gregory's depression. *See Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted).

### B. Substantial evidence supports the ALJ's RFC determination

Gregory argues that the evidence does not support the ALJ's RFC determination regarding her physical impairments. Doc. 14 at 7–14. She argues that the ALJ failed to properly assess Gregory's statements about her functional limitations and that the RFC determination was not supported by substantial evidence. *Id.*

An ALJ must determine a claimant's RFC by considering "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitation." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)) (alterations in original). In its review of the ALJ's decision, the Court must examine whether the decision is supported by "substantial evidence on the record as a whole" and whether the ALJ made any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is "less than a preponderance of the evidence[;]" it is "such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).

The Court's role is not to reweigh the evidence presented to the ALJ. *Hensley*, 829 F.3d at 934; *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if the Court found substantial medical evidence in the record supporting Gregory's position, it cannot remand simply because it "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo*, 839 F.3d at 72 (citing *Blackburn*, 761 F.3d at 858); *see also Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw

15

two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."). The Court must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten*, 685 F. App'x at 501.

The ALJ recognized that Gregory had seropositive rheumatoid arthritis (RA) and degenerative disc disease (DDD), both of which made it difficult for her to take care of her household and six children as a single mother. Tr. 15. Gregory alleged that she had difficulties cleaning the house, cooking, and doing laundry because of her pain. Tr. 15. She explained that she had difficulty dressing, bathing, caring for her hair, and using the toilet. Tr. 196. At the hearing, Gregory testified that she was "able to stand for 10 minutes, walk 12 feet, and sit for about 15 minutes" and had trouble lifting things heavier than five pounds with her hands due to her arthritis. Tr. 15. She testified that she sometimes had difficulty feeding herself because of her limited range of motion, being unable to lift items, and being unable to cook for herself. Tr. 35–36. She also testified that her hands were consistently swollen and in pain, so she could not fully close them or grip things with them. Tr. 26.

Gregory was only 35 years old on the date last insured, qualifying as a younger individual under 20 C.F.R. 404.1563(c). Tr. 15, 19. The ALJ considered the evidence and found that Gregory's impairments could "reasonably be expected to cause the alleged symptoms." Tr. 16. However, the ALJ also discussed evidence suggesting that, while Gregory had significant limitations, they did not preclude all work activity. Tr. 16–18. The ALJ determined that the medical evidence and other evidence in the record was not entirely consistent with Gregory's statements concerning the "intensity, persistence and limiting effects of these symptoms" and that she was "capable of doing a job that was less strenuous both mentally and physically." Tr.

16, 18. The ALJ determined that for the relevant period, Gregory's RFC was limited to a restricted range of sedentary work due to her physical impairments. Tr. 15.

The ALJ determined that Gregory's treatment history was inconsistent with her allegations of disabling physical limitations. Tr. 16–18. She alleged disability beginning on January 1, 2016, but the ALJ observed there was no evidence of treatment for her RA from her onset date until October 2016, when she went to the emergency room for hand pain and eventually started seeing a rheumatologist, Dr. Thekkemuriyil. Tr. 16, 330. She told Dr. Thekkemuriyil at the time that she had not taken any medication for RA for several years. Tr. 330. Similarly, Gregory complained of severe back pain due to her DDD and said she got facet injections once or twice a month, but there was an apparent year-long gap in treatment for her back pain as well, between March 2017 and March 2018. Tr. 17, 447, 804. These extended gaps in treatment during the relevant period weigh against Gregory's complaints of disabling pain and severe functional limitations. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

The ALJ also reasoned that the medical findings were inconsistent with Gregory's subjective reports of pain due to her RA. Tr. 16–17. An October 2016 x-ray examination of her left hand and wrist showed lunatotriquetral coalition (a common type of carpal coalition, representing a congenital fusion of two small bones of the hand/wrist) but was otherwise normal, as was imaging of her right knee. Tr. 334. Dr. Thekkemuriyil indicted on numerous occasions that x-ray examinations showed no arthritis erosions. Tr. 276, 319, 709, 729, 745. And Dr. Thekkemuriyil also repeatedly stated that Gregory's pain complaints appeared greater than the clinical RA findings would suggest. Tr. 324, 328, 710, 730, 746.

Gregory's RA also seemed to improve with treatment. Tr. 17–18. Dr. Thekkemuriyil repeatedly documented improvement in Plaintiff's RA symptoms during the relevant time

17

period.  Tr. 277, 706, 728, 744, 761.  In January 2017, Gregory reported that her RA was in remission.  Tr. 17, 600.  By June 2017, Gregory's hands had improved, with no more swelling of the wrists, though she still exhibited some "mild" synovitis or shoulder tenderness.  Tr. 16, 275, 322, 326, 329–30, 708, 728, 744, 763.  Although in June 2017, Gregory did have to visit the hospital for pain in her left hand, this RA flare occurred after she had missed a dose of her RA medication.  Tr. 726.  When she restarted her medication and saw Dr. Thekkemuriyil a week later, she no longer had active synovitis and her wrist had no swelling or redness.  Tr. 728, 730.  As is the case here, when an impairment can be controlled by treatment or medication, or is amenable to treatment, it does not support a finding of total disability.  *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014); *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brown*, 390 F.3d at 540)).

Regarding Gregory's DDD, the ALJ acknowledged that objective imaging showed degenerative changes in Plaintiff's cervical spine and a disc protrusion and annular tear in her lumbar spine.  Tr. 17, 457–60.  But the ALJ also observed these conditions were treated conservatively by her physician, Dr. Padda, who only used pain medication and facet joint injections during the relevant period.  Tr. 17–18, 447, 449, 451, 802, 804.  Conservative treatment and treatment through medication weigh against a finding of disability.  *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (affirming the district court's finding that "the conservative treatment, management with medication, and lack of required surgical intervention all support the ALJ's RFC determination"); *see also Bernard*, 774 F.3d at 488; *Wildman*, 596 F.3d at 965; *Milam*, 794 F.3d at 985.

Although Gregory eventually received more extensive treatment from Dr. Padda for her back pain and joint pain, the ALJ observed that most of this treatment was after the date Gregory was last insured and "the objective evidence prior to the date last insured does not indicate the severity of her current symptoms." Tr. 18. The ALJ noted specifically that there was also a one-year "gap in the evidence documenting treatment prior to the date last insured." Tr. 17. Accordingly, the ALJ determined that Gregory could perform sedentary work with additional exertional, postural, and environmental limitations during the relevant period. Tr. 17–18.

Gregory asserts that the ALJ improperly discounted Gregory's statements about her functional limitations. Doc. 14 at 7–14. Her argument lacks merit. The evaluation of subjective complaints is uniquely within the province of the ALJ as the trier of fact, and such findings are entitled to substantial deference by a reviewing court as long as "good reasons and substantial evidence support the ALJ's evaluation of credibility." *See, e.g., Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."). The ALJ adequately articulated his reasons for not fully crediting Gregory's subjective complaints concerning the "intensity, persistence and limiting effects of these symptoms[.]" Tr. 16. For the reasons outlined above, the ALJ found inconsistencies between Gregory's statements regarding the extent of her limitations and the objective medical evidence, in addition to the evidence of Gregory's gaps in treatment and statements to her treating providers. Tr. 16–18.

Further, the Court finds that substantial medical evidence in the record as a whole supports the ALJ's finding that Gregory was capable of performing sedentary work with certain limitation during the relevant period. Because the ALJ's finding "falls within the available zone

19

of choice," the Court defers to the ALJ's decision.  *See Schouten*, 685 F. App'x at 501.

Accordingly, the Court affirms the ALJ's decision.

V.      **Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Finding that the ALJ correctly applied the legal standards and that substantial evidence supports the ALJ's conclusions, the Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Gregory's Complaint with prejudice.  Doc. 1.  A separate judgment will accompany this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 17th day of September 2021.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE